UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. Jeffrey Webb, | )<br>)<br>) | |
| Plaintiff, | )<br>)<br>) | |
| v. | ) | 1:13-cv-00169-DBH |
| | ) | |
| MILLER FAMILY ENTERPRISE,<br>et als., | )<br>)<br>)<br>) | |
| Defendants. | ) | |

**RECOMMENDED DECISION ON MOTION FOR LEAVE
TO FURTHER AMEND COMPLAINT (ECF NO. 52)**

Plaintiff/Relator Jeffrey Webb requests leave to amend his Amended Complaint to satisfy the requirement that he set forth the factual basis for Defendants' liability under the False Claims Act (31 U.S.C. § 3729 *et seq.)* with specificity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. Petitioner requests the amendment following a Recommended Decision that concludes, *inter alia*, that the current Amended Complaint fails to state a "direct false claim" with the required specificity. In the requested amendment, Plaintiff seeks to address the specificity issue through the addition of one paragraph that, in his view, "should alleviate any concerns about whether the government was in fact billed a second time for the returned drugs, as it is a matter of statistical certainty." (Motion for Leave to Further Amend at 2, ECF No. 52.) Following a review of the pleadings, and after consideration of the parties' arguments, as explained below, the recommendation is that the Court deny the motion.[1]

---

[1] The Court referred the motion. Although a motion to amend is within the magistrate judge's authority (*Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 9 n.2 (1st Cir. 2000)), because the motion is directly related to, and in fact was filed in response to, the Recommended Decision that I previously issued on Defendants' Motions to Dismiss and Plaintiff's related motion to amend (ECF No. 50), and particularly given that in its review of the interrelated decisions the Court will determine whether Plaintiff can proceed on his claim, I concluded that it was appropriate to issue a

## The Proposed Amendment

Plaintiff seeks to supplement the Amended Complaint with the following paragraph:

28A. Plaintiff, in his role as the LTC Operations Manager for Defendants' LTC division, was intimately familiar with the volume of prescription drugs sold to patients of the Facilities, as well as the payors for those prescription drugs. Seventy percent of the prescription drugs sold by Defendants' LTC division were paid for with either MaineCare or Medicare Part D funds. All tablet or capsular drugs dispensed by Defendants' LTC division to Facilities' patients were sealed in blister pack. Any returned drugs remained in blister pack upon their return, and 90% of those returned drugs were removed by Defendants from the blister pack and returned to pill bottles that were, in size, one quart or less. It was impractical, for space reasons, to return these drugs to pill bottles while still in the blister pack, as the blister pack took up too much room in individual bottles. All returned drugs that were returned to pill bottles were ultimately resold. The only returned drugs which were not returned to pill bottles were narcotic drugs, which represented only 10% of the gross dollar volume of drug sales. As a matter of simple mathematics, 63% (90% of 70%) of all returned drugs would have been resold and rebilled to either MaineCare or Medicare Part D payors. It would be physically impossible to identify any specific returned drug initially paid for by MaineCare that was rebilled to MaineCare. However, as a matter of statistical certainty, the reselling of 90% of all returned drugs and the rebilling of 70% of those drugs to MaineCare or Medicare Part D payors, given the volume of drugs involved, necessarily involved a double billing to MaineCare or Medicare Part D insurers for drugs these payors had already paid for. Plaintiff has also reviewed the wholesaler invoices and revenue reports he retains from Defendants' LTC division. He was the sole Purchaser for that division between 2005 and 2012 and was chiefly responsible for setting up the Cardinal Inventory Manager ("CIM") system in 2006. He maintained the CIM system until 2012. Based upon his review of those documents, there were significantly more sales than purchases for Defendants' LTC division and the value of excess inventory rose over this same time period. A pharmacy cannot have sales continually exceed purchases and still have inventory increase unless entities are being billed twice for the same drug.

## Discussion

Courts should grant leave to amend "freely" when "justice so requires." Fed. R. Civ. P. 15(a). Leave to amend is properly denied for "undue delay, bad faith or dilatory motive on the

---

recommended decision on the pending motion to afford the Court, in the event a party objects to this recommendation, the opportunity to apply the same standard of review for all of the decisions.

part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962).

Here, the issue is whether in the context of a qui tam action, the proposed amendment satisfies the specificity requirement of Rule 9(b).[2] *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009); *United States ex rel. Karvelas v. Melrose–Wakefield Hosp.*, 360 F.3d 220, 228 (1st Cir. 2004). In other words, the issue is whether the amendment would be futile.

Satisfying Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In an action asserted under the False Claims Act, "if Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1311 (11th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003) (emphasis in original) (cited with approval in *Karvelas*, 360 F.3d at 234-35). That is, "[e]vidence of an actual false claim is 'the *sine qua non* of a False Claims Act violation.'" *Karvelas*, 360 F.3d at 225 (quoting *Clausen*, 290 F.3d at 1311).

Ordinarily, in a qui tam action under the False Claims Act, a plaintiff must assert details such as the time, place, and content of false claims. *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 731 (1st Cir. 2007). General allegations regarding plans and schemes do not suffice. *Id.* Instead, a party must set forth "details that identify particular false claims for payment that were actually submitted to the government." *Id.* at 732. *See also Karvelas*, 360 F.3d at 231 ("[A] qui tam relator may not present general allegations in lieu of the details of actual false claims in the

---

[2] Defendants oppose the request based, in part, on the number of prior amendments. I am not persuaded that Plaintiff's motion should be denied on that basis.

3

hope that such details will emerge through subsequent discovery."). As explained by the First Circuit in *Karvelas*, the details of actual false claims include "the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of money charged to the government, the particular goods or services for which the government was billed, [and] the individuals involved in the billing . . . ." 360 F.3d at 233.

Although Plaintiff has not asserted the specific time, place and content of the false claims, Plaintiff contends that the proposed amendment satisfies the specificity requirement because it demonstrates to a statistical certainty that Defendants submitted a second claim for drugs for which the government had previously paid. In particular, Plaintiff asserts that the amendment "should alleviate any concerns about whether the government was in fact billed a second time for the returned drugs." (Motion at 2.)

The First Circuit, however, has determined that statistical evidence is only sufficient in a limited type of qui tam action. In *U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, the Court wrote:

> In *Rost*, we noted a distinction between a qui tam action alleging that the defendant made false claims to the government, and a qui tam action in which the defendant induced *third parties* to file false claims with the government. 507 F.3d at 732 (noting that latter action is 'in a different category' than former). In the latter context, we held that a relator could satisfy Rule 9(b) by providing 'factual or statistical evidence to strengthen the inference of fraud beyond possibility' without necessarily providing details as to each false claim. *Rost*, 507 F.3d at 733.

579 F.3d 13, 29 (1st Cir. 2009) (emphasis in original). The Court thus distinguished the specificity required where, as in this case and as in *Karvelas*, the plaintiff alleges that the defendant made a false claim, from a case in which the plaintiff alleges, as in *Duxbury*, that the defendant induced a third party to submit a false claim. In the former type of case, the details identified in *Karvelas*

4

are necessary, and the statistical evidence, as set forth in Plaintiff's proposed amendment, is insufficient.

In this case, Plaintiff contends that Defendants have made false claims, but he has not provided the dates, the content of the forms or bills, their identification numbers, the amount charged, or the particular goods associated with any particular claim submission. Rather, he has simply asserted a general description of an alleged scheme and a statistical analysis that Plaintiff maintains demonstrates that false claims were regularly submitted. Plaintiff, therefore, has not satisfied the specificity requirement articulated by the First Circuit in *Karvelas*. Indeed, through his attempt to use statistical evidence to satisfy the requirements of Rule 9(b), Plaintiff essentially acknowledges that he cannot present the details that *Karvelas* requires. Because Plaintiff's proposed amendment does not include details sufficient to satisfy the specificity requirement of Rule 9(b), Plaintiff's proposed amendment would be futile.

**Conclusion**

Based on the foregoing analysis, the recommendation is that the Court deny Plaintiff's Motion for Leave to Further Amend Complaint (ECF No. 52).

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 10th day of October, 2014.